**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARIE MEZILE, individually and on behalf
of all others similarly situated,

                    Plaintiff,

    v.

BEECH-NUT NUTRITION COMPANY,

                 Defendant.

**Civil Action No.**  1:21−cv−00756 (TJM/CFH)

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMAND**

Plaintiff, on behalf of herself and all others similarly situated, brings this class action suit for damages and injunctive relief for purchasers of Baby Food Products (as defined herein) that Defendant Beech-Nut Nutrition Company ("Beech-Nut") marketed and sold without disclosing that they were tainted with arsenic, lead, cadmium, and mercury ("Toxic Heavy Metals") at levels above what is considered safe for babies. Plaintiff alleges the following based upon personal information as to allegations regarding herself, on the investigation of her counsel, and on information and belief as to all other allegations.

## BACKGROUND

1.  On February 4, 2021, the Subcommittee on Economic and Consumer Policy of the U.S. House of Representatives (the "Subcommittee") released a Report[1] concluding that baby food manufacturers, including Beech-Nut, sold Baby Food Products containing concentrations of inorganic arsenic, lead, cadmium, and mercury at levels above what is considered safe for babies.

---

[1] Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report ("Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, U.S. House of Representatives, at 11, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

2.      Beech-Nut does not disclose the Toxic Heavy Metal content of its foods on its labels or in its marketing materials, nor does it warn consumers that its Baby Food Products may contain potentially dangerous levels of Toxic Heavy Metals.

3.      Plaintiff and the Class members purchased Baby Food Products manufactured and sold by Beech-Nut, unaware that Beech-Nut's products potentially contain Toxic Heavy Metals at levels well above what is considered safe for babies. Had Beech-Nut disclosed the Toxic Heavy Metal content on its product labels, or otherwise warned that its products could contain levels of Toxic Heavy Metals considered unsafe, neither Plaintiff nor any other reasonable consumer would have purchased Beech-Nut's products.

4.      Plaintiff brings this class action on her own behalf and on behalf of other purchasers of Beech-Nut's' Baby Food Products,[2] to seek refunds and all other economic losses suffered as a result of their purchases of Beech-Nut's Baby Food Products, as well as injunctive relief.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Beech-Nut's state of citizenship, and more than two-thirds of the Class members reside in states other than the state in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

---

[2] The term "Baby Food Products" refers to Baby Food Products that contain Toxic Heavy Metals, including Baby Food Products purchased by Plaintiff. Plaintiff reserves the right to amend this definition as her investigation continues and she has had an opportunity to conduct discovery.

6.      This Court has personal jurisdiction over Beech-Nut in this matter. Beech-Nut is headquartered in the State of New York. Moreover, Beech-Nut has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state, and/or marketed, advertised, distributed and/or sold products, and caused injuries to Plaintiff and Class Members.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Beech-Nut transacts substantial business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

## PARTIES

8.      Plaintiff Marie Mezile is a resident of the State of New York. Ms. Mezile purchased Baby Food Products made by Defendant Beech-Nut.

9.      Defendant Beech-Nut Nutrition Company ("Beech-Nut") is a New York corporation with corporate headquarters in Amsterdam, New York. Beech-Nut's baby food products are sold and purchased throughout the United States.

## FACTS

A.      Beech-Nut Touts the Quality and Safety of Its Baby Food Products.

10.     Few things are as precious as babies are to their parents and other caretakers. Consumer research from The Nielsen Company shows that the "big three" attributes buyers look for in a baby food product are a trusted brand, good infant nutrition, and the safety of the products for consumption by children.[3]

---

[3]  OH, BABY! Trends in the Baby Food and Diaper Markets Around the World, at 17 (The Nielsen Company, August 2015) https://www.nielsen.com/wp-

11.     Consumers expect that baby food manufacturers will regard their children's health and safety as paramount concerns when it comes to formulating their products, sourcing their ingredients, and testing for safety, and that manufacturers will be transparent in their labeling and marketing about what goes into their Baby Food Products.[4]

12.     Unsurprisingly, Beech-Nut touts its Baby Food Products as being tested as safe for babies, in compliance with government regulations, and as containing only safe ingredients. For example, on its website, Beech-Nut promises that "Making high quality, safe, and nutritious foods for babies and toddlers will always be our #1 priority." "We're proud to offer natural and organic products that are free from artificial preservatives, colors and flavors. In fact, we conduct over 20 rigorous tests on our purees, testing for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff). Just like you would, we send the produce back if it's not good enough."[5]

13.     However, Beech-Nut's statements and marketing are incomplete, misleading and deceptive with respect to the existence and concentrations of Toxic Heavy Metals in its products.

14.     Beech-Nut knows that Plaintiff and the other Class members lack the scientific knowledge and resources necessary to test or assess whether the Baby Food Products they purchase contain levels of Toxic Heavy Metals exceeding levels that are safe for babies.

B.     Beech-Nut Sold Baby Food Products Tainted by Toxic Heavy Metals.

15.     Scientists and child development experts have long known that childhood exposure to Toxic Heavy Metals can cause a number of adverse neurological, cognitive, and

---

content/uploads/sites/3/2019/04/Global20Baby20Care20Report20Revised20FINAL-2.pdf (accessed March 1, 2021).
[4] *Id.*
[5] https://www.beechnut.com/our-story/.

other developmental consequences. Many of these changes are irreversible, including permanent losses in IQ, memory, and comprehension, as well as ADHD and behavioral problems that persist into adulthood and result in reduced earning capacity.

16.     The FDA cautions that Toxic Heavy metals have "no established health benefit" and "even low levels of harmful metals from individual food sources, can sometimes add up to a level of concern."[6]

17.     There is no level of Toxic Heavy Metal exposure that is considered acceptable for babies. Child advocacy organizations such as Healthy Babies Bright Futures recommends a goal of "no measurable amount" of Toxic Heavy Metals in Baby Food Products.[7]

18.     In November 2019, the Subcommittee sought internal testing records and other documents from several baby food manufacturers, including Beech-Nut, to investigate concerns about heavy metals in baby foods.

19.     Based on this investigation, the Subcommittee concluded that "commercial baby foods contain dangerous levels of arsenic, lead, mercury, and cadmium."[8]

20.     The Subcommittee further found that baby food manufacturers "knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."[9]

---

[6] Report, pp. 9-10 (quoting "Food and Drug Administration, Metals and Your Food" (online at www.fda.gov/food/chemicals-metals- pesticides-food/metals-and-your-food) (accessed Jan. 26, 2021)).

[7] Report, pp. 13, 21, 29, &32) (citing Healthy Babies Bright Futures, *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead* (Oct. 2019) (online at www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).

[8] Report, p. 59.

[9] *Id.*

21.     The Subcommittee also criticized the industry's testing practices.[10]

22.     Beech-Nut typically only tested ingredients, which likely underrepresents the levels of Toxic Heavy Metals in its finished Baby Food Products.[11]

23.     The Subcommittee observed that in many cases, Beech-Nut released products for sale even after its test results showed concentrations of Toxic Heavy Metals exceeding its own internal goal thresholds.[12]

24.     **Inorganic Arsenic.** Regulation of inorganic arsenic in baby food is limited. According to the Subcommittee Report, the FDA has set a maximum allowable level of 10 parts per billion (ppb) for both bottled and tap water; however, there "is no established safe level of inorganic arsenic consumption for babies."[13]

25.     The Subcommittee found that Beech-Nut only tested arsenic content in its ingredients, not its final product. The Subcommittee also determined that Beech-Nut used ingredients containing as much as 913.4 ppb arsenic and noted that test results showed that Beech-Nut used at least fourteen other ingredients containing over 300 ppb arsenic and used at least 45 ingredients containing over 100 ppb arsenic.[14]

26.     **Lead.**  While there are no Federal standards for lead in baby foods, the Subcommittee found "a growing consensus among health experts that lead levels in baby foods should not exceed 1 ppb."[15]

---

[10] Report, p. 13.
[11] Report, pp. 56-57.
[12] Report, pp.  37-39.
[13] Report, p. 13.
[14] Report, p. 17.
[15] Report, p. 21.

27.     The Subcommittee found that Beech-Nut "routinely used ingredients with high lead content, including 483 ingredients that contained over 5 ppb lead, 89 ingredients that contained over 15 ppb lead, and 57 ingredients that contained over 20 ppb lead."[16]

28.     **Cadmium.** While there are no federal standards for cadmium in baby foods, the Subcommittee identified proposed and existing cadmium standards including 5 ppb for drinking water (FDA and EPA).[17]

29.     The Subcommittee found that Beech-Nut had set internal guidelines of 3,000 ppb for cadmium for certain ingredients, which "far surpass[es] any existing regulatory standard in existence" and the level "for any other baby food manufacturer that responded to the Subcommittee's inquiry."[18]

30.     **Mercury.**  There are also no federal standards for Mercury in baby foods. The EPA limits mercury in drinking water to 2 ppb."[19]

31.     According to the Subcommittee, Beech-Nut apparently did not even test for mercury.[20]

32.     The concentrations of Toxic Heavy Metals reflected in Beech-Nut's own test results and as reported by the Subcommittee showed Beech-Nut is knowingly selling Baby Food Products and using ingredients that contain potentially dangerous levels of Toxic Heavy Metals.

C.     Plaintiff and other Class Members Were Harmed.

33.     Prior to the release of the Subcommittee Report, Plaintiff and each member of the proposed Classes purchased one of more Baby Food Products manufactured and sold by Beech-

---

[16] Report, p. 23.
[17] Report, p. 29.
[18] Report, pp. 37-38.
[19] Report, p. 32.
[20] Report, p. 33.

Nut, intending for them to be fed to children and believing that they were of high quality and safe for children to consume. Plaintiff was unaware that Beech-Nut would sell Baby Food Products that contained undisclosed dangerous levels of Toxic Heavy Metals.

34.     Based on Beech-Nut's product labeling and marketing materials, Plaintiff did not expect, and no reasonable consumer would have expected, that any of Beech-Nut's Baby Food Products contained Toxic Heavy Metals at unsafe levels.

35.     Had Plaintiff and the other Class members known that Beech-Nut was selling Baby Food Products containing Toxic Heavy Metals above levels considered safe for their infants as revealed in the Subcommittee Report, they never would have purchased Beech-Nut's Baby Food Products.

36.     Upon learning that Beech-Nut's Baby Food Products potentially contain Toxic Heavy Metals at levels considered unsafe for children, Plaintiff no longer believed the Beech-Nut's Baby Food Products were quality products or safe for consumption by babies and children.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as a representative of all those similarly situated, on behalf of a proposed nationwide class defined as: All persons in the United States who purchased Beech-Nut's Baby Food Products (the "National Class"). Excluded from the Class are Beech-Nut, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

38.     Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed New

York class defined as: All persons who purchased Beech-Nut's Baby Food Products in the State of New York (the "New York Class"). Excluded from the Class are Beech-Nut, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

39.     The members of each of the Classes are so numerous that their individual joinder is impracticable. On information and belief, members of each of the Classes number in the tens or hundreds of thousands. The precise number of members of each of the Classes and their addresses are presently unknown to Plaintiff but may be ascertained from grocery and other records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

40.     Common questions of law and fact exist as to all members of each Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a.      Whether Beech-Nut's Baby Food Products contain Toxic Heavy Metals at levels higher than what is considered safe for babies;

b.      Whether Beech-Nut misrepresented to Plaintiff and the Class members that its Baby Food Products were safe for consumption by babies and did not contain potentially unsafe levels of Toxic Heavy Metals;

c.      Whether Beech-Nut omitted and concealed the fact that its Baby Food Products contained Toxic Heavy Metals higher than levels considered safe for babies;

d.      Whether the presence of Toxic Heavy Metals in Beech-Nut's Baby Food Products was a material fact to Plaintiff and Class members;

e.      Whether Beech-Nut's conduct violated New York's Deceptive Acts and Practices Act or False Advertising Act;

     f.       Whether Beech-Nut breached express or implied warranties to Plaintiff and the Class members; and

     g.       Whether Beech-Nut's conduct resulted in Beech-Nut unjustly retaining a benefit to the detriment of Plaintiff and class members, and violated the fundamental principles of justice, equity, and good conscience.

41.    Plaintiff's claims are typical of the claims of the other members of the Classes, because, among other things, Plaintiff and all Class members suffered the same type of injury, namely, paying for a product that they otherwise would not have purchased had Beech-Nut disclosed the presence of Toxic Heavy Metals in its Baby Food Products. Further, there are no defenses available to Beech-Nut that are unique to Plaintiff.

42.    Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent, she has retained counsel competent and experienced in class action litigation, and she and her counsel will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

43.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Beech-Nut, so it would be uneconomical and impracticable for Class members to individually seek redress for Beech-Nut's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the Class action device presents far fewer management difficulties, and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the National Class and the New York State Class)**

44.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

45.     This cause of action is brought on behalf of the each of the Classes against Beech-Nut.

46.     In connection with its sale of Baby Food Products, by and through statements in labels, publications, package inserts, and other written materials intended for consumers and the general public, Beech-Nut made certain express affirmations of fact and/or promises relating to its Baby Food Products to Plaintiff and the Classes, as alleged herein, including that such Baby Food Products were safe for consumption by infants and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the risks associated with use of Baby Food Products containing Toxic Heavy Metals.

47.     Beech-Nut advertised, labeled, marketed, and promoted Baby Food Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff and the Classes, thereby making an express warranty that Baby Food Products would conform to the representations.

48.     Beech-Nut's affirmations of fact and/or promises about Baby Food Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain.

49.     Despite the express warranties Beech-Nut created with respect to Baby Food Products, Beech-Nut delivered Baby Food Products to Plaintiff and the Classes that did not conform to Beech-Nut's express warranties in that such Baby Food Products were defective, dangerous, and unfit for use, did not contain labels adequately representing the nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, Beech-Nut breached the express warranties by representing through its labeling, advertising, and marketing materials that its Baby Food Products were safe, and intentionally withheld information about the contents and risks associated with use of the Baby Food Products.

50.     Beech-Nut had sole access to material facts concerning the nature of the risks associated with its Baby Food Products, as expressly stated on its labels, and knew that consumers and purchasers such as Plaintiff could not have reasonably discovered that the risks expressly included in Baby Food Products' labels or other statements about its Baby Food Products were inadequate and inaccurate. Plaintiff and each member of the Classes have had sufficient direct dealings with either Beech-Nut or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Beech-Nut, on the one hand, and Plaintiff and each member of the Classes, on the other hand.

51.     As a direct and proximate result of Beech-Nut's breaches of express warranties, as alleged herein, Plaintiff and the Classes sustained an economic loss in an amount to be proven at trial.

52.     As a result of Beech-Nut's breaches of express warranties, as alleged herein, Plaintiff and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the National Class and the New York State Class)

53.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

54.     This cause of action is brought on behalf of the each of the Classes against Beech-Nut.

55.     At all relevant times, Beech-Nut was a merchant with respect to Baby Food Products that were sold to Plaintiff and members of the Classes and was in the business of selling such products.

56.     Each Baby Food Product sold by Beech-Nut comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used.

57.     Beech-Nut breached its implied warranty of merchantability because its Baby Food Products were not in merchantable condition when sold.

58.     Beech-Nut's Baby Food Products are not fit for the ordinary purpose for which they were sold because they contain Toxic Heavy Metals.

59.     Plaintiff and members of the Classes were injured as a direct and proximate result of Beech-Nut's breaches of implied warranties of merchantability. Plaintiff and members of the Classes were damaged as a result of Beech-Nut's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Baby Food Products, they would not have purchased such products.

60.     As a result of Beech-Nut's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

<u>**COUNT III**</u>
**UNJUST ENRICHMENT**
**(On Behalf of the National Class and the New York State Class)**

61.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

62.     This cause of action is brought on behalf of each of the Classes against Beech-Nut.

63.     Beech-Nut intended and expected that, as a result of its knowing wrongful acts as alleged above, Beech-Nut would profit and benefit from sales of Baby Food Products that would otherwise have not occurred.

64.     Beech-Nut voluntarily accepted and retained these profits and benefits, knowing full well that Plaintiff and the other Class members received Baby Food Products that were not of a quality level that reasonable purchasers expect of foods intended for babies.

65.     Beech-Nut has been unjustly enriched by its wrongful and deceptive withholding of benefits to its customers at the expense of Plaintiff and the Class members.

66.     Principles of equity and good conscience preclude Beech-Nut from retaining these profits and benefits.

67.     As a direct and proximate result of Beech-Nut's unjust enrichment, Plaintiff and the Class members suffered injury and seek an order compelling Beech-Nut to disgorge and return to Plaintiff and the Class members the amounts that each Class member paid to Beech-Nut.

<u>**COUNT IV**</u>
**VIOLATION OF THE NEW YORK DECEPTIVE ACTS AND PRACTICES ACT**
**(N.Y. GEN. BUS. LAW §349)**
**(On Behalf of the New York Class)**

68.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

69.      This cause of action is brought on behalf of the New York Class against Beech-Nut.

70.     Plaintiff and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h). Beech-Nut is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

71.     The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).

72.     In the course of its business, Beech-Nut, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding Toxic Heavy Metals in its Baby Food Products, as detailed above.

73.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding Toxic Heavy Metals in its Baby Food Products, as detailed above, Beech-Nut engaged in one or more of deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

74.     Beech-Nut's misrepresentations and omissions regarding the unsafe nature of Baby Food Products were disseminated to Plaintiff and the Class members in a uniform manner.

75.     Beech-Nut's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds,

and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members about the nature of Baby Food Products.

76.    The facts regarding Baby Food Products that Beech-Nut knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

77.    Plaintiff and Class members had no way of discerning that Beech-Nut's representations were false and misleading, or otherwise learning the facts that Beech-Nut had concealed or failed to disclose. Plaintiff and Class members did not, and could not, discover Beech-Nut's deception on their own.

78.    Beech-Nut had an ongoing duty to Plaintiff and the Class members to refrain from unfair and deceptive practices under the New York DAPA in the course of its business. Specifically, Beech-Nut owed Plaintiff and Class members a duty to disclose all the material facts regarding Baby Food Products, including that such products contained unsafe levels of Toxic Heavy Metals because it possessed exclusive knowledge, and it intentionally concealed the facts regarding Baby Food Products, including that such products contained unsafe levels of Toxic heavy metals and/or it made representations that were rendered misleading because they were contradicted by withheld facts.

79.    Plaintiff and the Class members were aggrieved by Beech-Nut's violations of the New York DAPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Beech-Nut's knowing and intentional misrepresentations, omissions, concealments, or failures to disclose material facts regarding Baby Food Products, including that

such products contained unsafe levels of Toxic Heavy Metals and thus were not fit to be used for their intended purpose. Specifically, Plaintiff and the Class members purchased Baby Food Products in reliance on Beech-Nut's misrepresentations, omissions, concealments, or failures to disclose material facts regarding Baby Food Products. Had Beech-Nut not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased Beech-Nut's Baby Food Products, and, thus, they did not receive the benefit of the bargains and/or suffered out-of-pocket loss.

80.     Beech-Nut's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Beech-Nut's unlawful acts and practices complained of herein affect the public interest.

81.     As a result of Beech-Nut's violations of the New York DAPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Beech-Nut's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the New York DAPA.

.
### COUNT V
**VIOLATION OF THE NEW YORK FALSE ADVERTISING ACT**
**(N.Y. GEN. BUS. LAW §350)**
**(On Behalf of the New York Class)**

82.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

83.     This cause of action is brought on behalf of the New York Class against Beech-Nut.

84.     Beech-Nut was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law. §350.

85.     The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade, or commerce." N.Y. Gen. Bus Law §350. False advertising includes "advertising, including labeling, of a commodity…if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of …representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a (1).

86.     Beech-Nut caused to be made or disseminated through New York and the United States, through labels, advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Beech-Nut, to be untrue and misleading to consumers, including Plaintiff and the Class members.

87.     In the course of its business, Beech-Nut, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Toxic Heavy Metals Baby Food Products, as detailed above.

88.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding unsafe levels of Toxic Heavy Metals in its Baby Food Products, as detailed above, Beech-Nut engaged in false advertising in violation of the New York FAA.

89.     Beech-Nut's misrepresentations and omissions regarding Toxic Heavy Metals in its Baby Food Products were disseminated to Plaintiff and the Class members in a uniform manner.

90.     Beech-Nut's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the unsafe nature of Baby Food Products.

91.     The facts regarding Baby Food Products that Beech-Nut knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

92.     Plaintiff and Class members had no way of discerning that Beech-Nut's representations were false and misleading, or otherwise learning the facts that Beech-Nut had concealed or failed to disclose. Plaintiff and Class members did not, and could not, discover Beech-Nut's deception on their own.

93.     Beech-Nut had an ongoing duty to Plaintiff and the Class members to refrain from false advertising under the New York FAA in the course of its business. Specifically, Beech-Nut owed Plaintiff and Class members a duty to disclose all the material facts regarding Baby Food Products, as described above, because it possessed exclusive knowledge, and it intentionally concealed or failed to disclose the facts regarding unsafe levels of Toxic Heavy Metals in its Baby Food Products and/or it made representations that were rendered misleading because they were contradicted by withheld facts.

94.     Plaintiff and the Class members were aggrieved by Beech-Nut's violations of the New York FAA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Beech-Nut's knowing and intentional misrepresentations, omissions, concealments, or failures to disclose material facts regarding Toxic Heavy Metals in its Baby Food Products. Specifically, Plaintiff and the Class members purchased Baby Food Products in reliance on Beech-Nut's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Beech-Nut not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased Beech-Nut's Baby Food Products, and thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

95.     Beech-Nut's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Beech-Nut's unlawful acts and practices complained of herein affect the public interest.

96.     As a result of Beech-Nut's violations of the New York FAA, as alleged herein, Plaintiff and the other New York Class members seek an order enjoining Beech-Nut's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the New York FAA.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Beech-Nut, as follows:

a.     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes as set forth above and appointing Plaintiff's attorneys as Class Counsel;

b.     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

c.     For an order enjoining Beech-Nut from selling Baby Food Products until the higher and/or unsafe levels of Toxic Heavy Metals are removed or full disclosure of the presence of Toxic Heavy Metals appears on all labels,

packaging, and advertising;

d.     For an order enjoining Beech-Nut from selling Baby Food Products while in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

e.     For an order requiring Beech-Nut to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

f.     For damages in amounts to be determined by the Court and/or jury;

g.     For prejudgment interest on all amounts awarded;

h.     For an order of restitution and all other forms of equitable monetary relief; and

i.     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

[Signature on following page]

Dated: July 1, 2021

James R. Peluso, Bar Roll No.: 105634
**DREYER BOYAJIAN LLP**
75 Columbia Street
Albany, NY 12210
Telephone: (518) 463-7784
jpeluso@dblawny.com

Joseph C. Kohn
Douglas A. Abrahams
William E. Hoese
Zahra R. Dean
Aarthi Manohar
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
zdean@kohnswift.com
dabrahams@kohnswift.com
whoese@kohnswift.com
chillwig@kohnswift.com
amanohar@kohnswift.com

David H. Fink
Nathan J. Fink
**FINK BRESSACK**
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

Michael L. Roberts
Karen Halbert
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223
Telephone: (501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us

*Attorneys for Plaintiff*